*Exhibit A*

## **AFFIDAVIT**

I, Joseph R. Hoing, being duly sworn, states as follows:

1. I am a Task Force Officer (TFO) of the Drug Enforcement Administration (DEA), United States Department of Justice, and have been so employed since 1996.

2. This affidavit is submitted in support of the forfeiture of the following property ("the defendant property"):  *Twenty Thousand Dollars ($20,000.00) in United States Currency.*

3. The information in this affidavit comes from my own investigation, as well as information provided by other law enforcement personnel with firsthand knowledge of the facts set forth herein. Because this affidavit is submitted for the limited purpose of supporting a Verified Complaint of Forfeiture, I have not included each and every fact known to the government about the investigation described below.

4. On September 7, 2022, I received information from two confidential sources (CS) that a male identified as Charleston Montrel HENDRICKS purchased a one-way ticket on September 6, 2022, for next day travel. HENDRICKS was scheduled to depart Memphis, Tennessee to San Francisco, California aboard American Airlines flight 3712 connecting to flight 2802 in Dallas, Texas, on September 7, 2022.

5. CS 1 provided the cell number utilized by HENDRICKS in his reservation as 901-409-XXXX which is indexed in another DEA Operation. With the information provided by CS 1, I was able to obtain a Tennessee driver's license photo of him. TFOs Randy Lee, Bobby Weeks and I went to Memphis International Airport (MIA) in an attempt to locate him.

6. CS 2 advised us that HENDRICKS had checked in for his flight and had checked two suitcases. The CS's provided no further information.

7. TFOs Weeks and Lee located HENDRICKS sitting near Gate 19 where his flight was

scheduled to depart. The officers approached HENDRICKS and identified themselves by showing their credentials. TFO Weeks, after verbally confirming HENDRICKS identity, asked him if he would answer a few questions. HENDRICKS stated he did not mind. TFO Weeks advised HENDRICKS that the DEA was working narcotics K9s on the checked bags for his flight and advised him that a narcotics K9 positively alerted on his two checked suitcases for the odor of controlled substances. TFO Weeks asked him if he was carrying any drugs or cash in either of his checked suitcases. HENDRICKS stated he did not have large amounts of cash or narcotics in his checked suitcases. HENDRICKS then gave verbal consent for officers to search his two checked suitcases. TFO Weeks relayed this information to me.

8. TFOs Weeks and Lee asked HENDRICKS if he was carrying any drugs or large amounts of cash in his carry-on bag. HENDRICKS stated he was carrying cash in his carry-on bag but did not have any narcotics. TFOs Weeks and Lee sought verbal consent from him to search his carry-on bag to which HENDRICKS consented. The officers discovered an unknown amount of U.S. currency inside of HENDRICKS carry-on bag, wrapped in rubber bands. HENDRICKS said the amount was $10,000. TFOs Weeks and Lee requested for HENDRICKS to go with them to the MIA Police Office to witness the search of his checked suitcases. HENDRICKS agreed to go to the police office.

9. MIA Police Sgt. Lott and I retrieved HENDRICKS' checked suitcases and took them to the MIA Police Office. TFO Weeks introduced me to HENDRICKS. I then advised HENDRICKS that I was with the DEA and wanted to ask him a few questions. HENDRICKS agreed to the questioning. I then asked HENDRICKS if he gave consent to search his two checked suitcases. HENDRICKS agreed and advised, "you can search my suitcases." I searched one of HENDRICKS checked suitcases with negative results. TFO Lee searched the second checked suitcase with

negative results.

10. TFOs Weeks and Lee took photos of the currency which was wrapped in rubber bands inside HENDRICKS carry-on bag. HENDRICKS first stated he had $10,000.00 cash but changed his story and stated he had $15,000.00 cash in his carry-on bag. I asked HENDRICKS to empty his pants pockets on the desk in the MIA Police Office. HENDRICKS pulled his pockets out but laid a large bundle of cash and a cell phone on another table, consistent with an attempt to prevent authorities from detecting the cash. TFO Lee recovered the bundle of cash and placed it on the desk. TFO Lee then asked HENDRICKS to count the cash from the bundle that was in his pants pocket. HENDRICKS started to count the cash which appeared to be fifty- and hundred-dollar bills but dropped the bundle of cash onto the desk and advised it was $5,000.00. The currency from HENDRICKS' bag and pocket was aggregated and seized via DEA 12. TFO Lee and I signed the SSEE as did HENDRICKS. HENDRICKS was given a copy of the DEA 12. I gave HENDRICKS a business card so he would know who seized his cash. We then offered to have HENDRICKS airline ticket re-issued but he declined advising he had no reason to go to California without cash.

11. HENDRICKS stated he works for Diamond Management Group and provided the business number of 901-462-XXXX. HENDRICKS salary is unknown, however, he stated that all of the U.S. currency he possessed is his from working for Diamond Management Group. HENDRICKS stated he buys and sells real estate. An open source and Tennessee Secretary of Business search revealed Diamond Management Group is owned by HENDRICKS mother, Missie Hendricks. No proof of where the U.S. currency came from was shown.

12. TFO Lee asked HENDRICKS for his mother and father's information to complete the DEA 202 when HENDRICKS made the spontaneous statement that his father Charles Hendricks had

been arrested by the DEA and had served federal time for cocaine. HENDRICKS stated his mother is Missie Hendricks. TFO Lee and I queried Charles and Missie Hendricks thru NADDIS and learned Charles Hendricks was sentenced in the Western District of Tennessee in 2019 to 120 months in prison for distribution of heroin. Missie Hendricks was referenced in the same case.

13. HENDRICKS was carrying three cell phones.

14. Charleston Montrel HENDRICKS has an NCIC criminal history consisting of the following offenses: possession controlled substance with intent to manufacture/deliver/sell marijuana; possession controlled substance with intent to manufacture/deliver/sell codeine; possession firearm during comm/commit dangerous felony; controlled substance: illegal possession; possession controlled substance with intent to man, possession firearm commission of felony and possession marijuana with intent to manufacture/deliver.

15. TFO Lee and I transported the currency to the MRO. I placed the SSEE containing the currency inside the garage area of the building where the MRO is located. I worked my narcotic detection K-9 "Moose" in the area at which time "Moose" alerted on the SSEE containing the currency for the odor of a controlled substance.

16. On September 9, 2022, TFOs Parks and Dion Cicinelli transported the currency to Loomis Armory for the official count. The official count amounted to $20,000.00.

17. The U.S. currency was aggregated and seized by me based on the theory that HENDRICKS was headed to California to buy narcotics.

18. No one is incarcerated. Criminal charges were not filed.

19. Based on the foregoing, I believe that the defendant currency is subject to forfeiture pursuant to 21 U.S.C. §881(a)(6).

I declare under penalty of perjury that the foregoing is true and correct.

This  29th  day of   March  , 2023.

                                            s/ Joseph R. Hoing
                                            JOSEPH R. HOING, Task Force Officer
                                            Drug Enforcement Administration